# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BENNIE AUSTIN MACK, JR., )<br>)<br>Plaintiff, pro se, )<br>)<br>v. )<br>)<br>CARL R. FOX, et al., )<br>)<br>)<br>Defendants. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:07CV760 |

This matter is before the court on seven motions by the parties. *Pro se* Plaintiff Bennie Austin Mack, Jr. has filed the following motions: (1) a motion for summary judgment (docket no. 8); (2) a motion for default judgment (docket no. 21); and (3) a "request for order" (docket no. 42). Various Defendants have also filed the following motions: (4) a motion to dismiss by Defendants James Woodall and Anand P. Ramaswamy (docket no. 11); (5) a motion to dismiss by Defendants Orange County North Carolina Magistrate's Office, Rex Fredericks, Loy Long, Gerald R. Koelling, Lucious Cheshire, James C. Stanford, Carl R. Fox, Allen Baddour, Kenneth C. Titus, Joseph M. Buckner, and Ripley Rand (docket no. 18); (6) a motion to dismiss by Defendants Moses Carey, Jr., and Orange County, North Carolina (docket no. 25); and (7) a motion to dismiss by Defendant Kevin Snead (docket no. 33). The parties have either responded in opposition to the various motions or the time to do so has passed; in this respect, the matter is ripe for

-1-

disposition. For reasons that follow, it will be recommended that the court deny all three of Plaintiff's motions and grant all motions filed by Defendants. To this extent, it will be recommended that the court dismiss Plaintiff's action with prejudice.

**BACKGROUND**

Pro se Plaintiff brings this action seeking compensatory, declaratory, and injunctive relief under 42 U.S.C. § 1983 against numerous government officials based on his claim that the pretrial release policy in effect in Orange County, North Carolina, violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Plaintiff has sued Defendants in their official and individual capacities. Plaintiff has named the following sixteen individuals and/or entities as Defendants: (1) Orange County Superior Court Judge Carl R. Fox; (2) District Attorney James Woodall; (3) Superior Court Judge Kenneth C. Titus; (4) District Court Judge Joseph M. Buckner; (5) Superior Court Judge Ripley Rand; (6) North Carolina State Bureau of Investigation Special Agent Kevin Snead; (7) the Orange County Magistrate's Office; (8) Orange County Magistrate Rex Fredericks; (9) Orange County Magistrate Loy Long; (10) Orange County Magistrate Gerald R. Koelling; (11) Orange County Magistrate Lucious Cheshire; (12) Orange County Clerk of Superior Court James C. Stanford; (13) Assistant District Attorney Anand P. Ramaswamy; (14) Orange County Commissioner Chairman Moses Carey, Jr.; (15) Resident Superior Court Judge Allen Baddour; and (16) Orange County, North Carolina.

-2-

Case 1:07-cv-00760-NCT-DPD   Document 61   Filed 11/04/08   Page 2 of 14

Plaintiff's Allegations

Plaintiff alleges that on May 31, 2006, he was charged with 11 counts of obtaining property by false pretenses in Orange County, North Carolina. The arresting entity was the North Carolina State Bureau of Investigation ("SBI") led by Defendant Special Agent Kevin Snead. (*See* Compl. ¶ 17.) Plaintiff alleges that Agent Snead and Superior Court Judge Ripley Rand originally set Plaintiff's bond at $2 million, which Plaintiff alleges violated the district's pretrial release policy. (*See id.*) Plaintiff alleges when he was taken into custody and shown the "condition of release" form with bail set at $2 million, Defendant Snead told Plaintiff that "this time we're serious." (*See id.* ¶ 18.) Plaintiff also alleges that Magistrate Long stated that the "high" bond was justified because the plaintiff "was wearing what appeared to be an expensive shirt and expensive shoes." (*See id.*)

Plaintiff further alleges that at the hearing for Plaintiff's First Appearance, Judge Ripley Rand refused to reduce Plaintiff's pretrial detainment. (*See id.* ¶ 19.) Plaintiff further alleges that on June 21, 2006, in a hearing to modify pretrial detainment, Superior Court Judge Carl R. Fox reduced Plaintiff's bond to $100,000 cash or $500,000 secured. (*See id.* ¶ 20.) Plaintiff alleges that Defendant District Attorney Woodall opposed the bond reduction at this hearing. (*See id.*)

Plaintiff alleges that in a later hearing to reduce his bond held on January 28, 2007, Defendant Assistant District Attorney Ramaswamy argued against reducing bond by falsely stating at the hearing that Plaintiff had been charged with assault on

-3-

Case 1:07-cv-00760-NCT-DPD   Document 61   Filed 11/04/08   Page 3 of 14

a governmental official. (*See id.* ¶ 21.) Plaintiff notes that Judge Titus denied Plaintiff's request for bond reduction at the January 28 hearing. (*Id.*)

Plaintiff alleges that on or around January 29, 2007, Plaintiff was charged with an additional seven counts of Obtaining Property by False Pretenses. (*See id.* ¶ 22.) Plaintiff notes that Judge Titus set Plaintiff's bond at $100,000 secured. Plaintiff contends that the bond should have been $25,000 secured, pursuant to the court's Pretrial Release Policy. (*Id.*)

Plaintiff further alleges that he sought copies of Orange County's pretrial release policy from two magistrates before he was able to obtain a copy of the policy. (*See id.* ¶ 22.) Plaintiff alleges that the magistrates gave him false information about the policy. Plaintiff contends that the refusal of Defendants to strictly apply the Orange County Pretrial Release Policy violates his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Plaintiff asks the court to declare that the actions and practices of Orange County officials constitute a violation of the pretrial release policy and to declare those violations criminal contempt. (Prayer for Relief, ¶ 1.) Plaintiff also seeks a permanent injunction against deviation from the strict language of the policy and compensatory and punitive damages for violations of the policy in Plaintiff's case. (*Id.*, ¶ 2.) Plaintiff seeks compensatory damages in the amount of $114,266,000 and punitive damages in the amount of $450,000,000. (*Id.*, ¶¶ 3, 4.)

Plaintiff's Claims for Injunctive and Declaratory Relief

I first note that in August 2008, the State dropped the criminal charges against Plaintiff, and Plaintiff is no longer in state custody. Plaintiff is currently in federal custody facing federal charges in this court in Case No. 1:08CR267. To the extent, then, that Plaintiff seeks prospective injunctive and declaratory relief in this action, his claims for prospective injunctive and declaratory relief are moot. *Accord Hernandez v. Carbone*, 567 F. Supp. 2d 320, 331 (D. Conn. 2008) (former prisoner's claim for injunctive relief in section 1983 action alleging excessive bail was moot where state charges were dropped and prisoner was no longer being held in pre-trial detention).

Motion to Dismiss for Lack of Personal Jurisdiction by Various Defendants for Failure to Properly Serve

I next address the motion to dismiss based on insufficient service of process by Defendants Fox, Titus, Buckner, Rand, Orange County North Carolina Magistrate's Office, Fredericks, Long, Koelling, Cheshire, Stanford, and Baddour. Rule 4(j)(2) provides, in pertinent part:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by . . . (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

FED. R. CIV. P. 4(j)(2). North Carolina law provides that service must be made upon an officer of the State by delivery of process to that officer's designated agent or, absent designation of an agent, delivery of process to the Attorney General of North Carolina. N.C. GEN. STAT. § 1A-1, Rule 4(j)(4).

In support of the motion to dismiss based on insufficient service, the moving Defendants note that they are all state judicial officers. *See* N.C. GEN. STAT. §§ 7A-3, 7A-4, 7A-40, and 7A-170. Defendants further contend that because there is no designated agent for service of process on State judicial officers, service must therefore be on the Attorney General. Plaintiff presented to this court's clerk summonses for all of the moving Defendants except for Defendant Judge Allen Baddour, for whom it appears no summons was prepared. The summonses presented to the clerk were addressed to these judicial Defendants' office or home addresses. The moving Defendants contend that Plaintiff's attempted service on the moving Defendants at their home addresses or offices is, therefore, insufficient and dismissal is appropriate as to these Defendants. Defendants further note that, although Plaintiff states that he mailed a copy of the Complaint to the Orange County Clerk of Court and the Office of the Attorney General, he did not serve the summonses with the Complaint.

To the extent that Plaintiff has sued each of the named Defendants in their official capacities, I agree that service was not proper because Plaintiff failed to comply with Rule 4(j) of the Federal Rules of Civil Procedure. The summonses

Plaintiff presented to the clerk were addressed to the above Defendants at their home or office addresses, not to an agent for service of process or the North Carolina Attorney General as required by state law. Moreover, the summonses were not served with the Complaint on the Office of the Attorney General.[1] Accordingly, service was not proper as to the state in accordance with Rule 4(j).

Plaintiff also named each of the moving Defendants in their individual capacities. To the extent that Plaintiff has sued Defendants in their individual capacities, Federal Rule 4(e), rather than Federal Rule 4(j), applies. *See* 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1109 (3d ed. 2002) ("[I]f the suit is against a governmental officer as an individual, rather than as an official, then service of the papers on the chief executive officer of the governmental entity [pursuant to Rule 4(j)(2)] will be insufficient to confer jurisdiction over that individual, who must be served as would any other individual defendant.").

Federal Rule 4(e), which applies to service upon individuals, provides, in pertinent part:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy

---

[1] Defendants note that summonses were reissued on February 12, 2008, but they were still addressed to the moving Defendants at either their home or office addresses, and there is nothing to indicate that the summonses were delivered to the Attorney General.

of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). In turn, North Carolina's Rule 4(j)(1) provides, in pertinent part, that service may be made upon an individual:

> a. By delivering a copy of the summons and of the complaint to the natural person or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.
> b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.
> c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee.
> d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt.
> e. By mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee. Nothing in this sub-subdivision authorizes the use of electronic mailing for service on the party to be served.

N.C. R. CIV. P. 4(j)(1).

Here, Plaintiff did not serve any of the individual moving Defendants in accordance with the manner prescribed under Federal Rule 4(e), or in the proper manner prescribed by North Carolina's Rule 4(j). North Carolina law provides that service of process may be made upon an individual by, among other things, "mailing

-8-

Case 1:07-cv-00760-NCT-DPD   Document 61   Filed 11/04/08   Page 8 of 14

a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. R. CIV. P. 4(j)(1)(c). Plaintiff has not shown that he served any summonses through certified mail, with return receipt requested, in accordance with North Carolina Rule of Civil Procedure 4(j)(1)(c). Nor has he shown that he delivered service under any other appropriate means listed in North Carolina's Rule 4(j). Therefore, Plaintiff failed to properly serve the moving Defendants in either their official or individual capacities, and, for this reason alone, the claims against the moving Defendants should be dismissed.

Motion to Dismiss by Various Defendants Based on Immunity

In any event, even if service had been proper upon the above-named Defendants, all of these Defendants, as well as other Defendants who were properly served, are entitled to various types of immunity from suit. First, judicial immunity bars suits for damages against judges where the act complained of is a "judicial act," even where the act was done maliciously or corruptly, as long as the act was not taken in the clear absence of subject matter jurisdiction.[2] *Stump v. Sparkman*, 435

---

[2] Judicial immunity includes immunity from damages as well as prospective injunctive relief. In *Pulliam v. Allen,* 466 U.S. 522, 541-42 (1984), the U.S. Supreme Court held that a judge is not shielded by absolute judicial immunity from declaratory or injunctive relief. In 1996, Congress effectively reversed *Pulliam* by enacting the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983). Section 309(c) of the FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . *unless a declaratory decree was violated or declaratory relief was unavailable.*" Thus, the doctrine of judicial immunity in section 1983 actions now extends to suits against

-9-

U.S. 349, 355-56 (1978); *Phillips v. Wood*, 341 F. Supp. 2d 576, 578 (M.D.N.C. 2004). Likewise, state court magistrates enjoy judicial immunity for actions taken in their judicial capacity such as setting bonds or issuing warrants. *Pressly v. Gregory*, 831 F.2d 514 (4th Cir. 1987); *Foust v. Hughes*, 21 N.C. App. 268, 270, 204 S.E.2d 230, 231 (1974). Since Plaintiff's Complaint alleges only that Defendants performed traditional judicial acts over proceedings in which they presided as judicial officials, they are therefore entitled to absolute judicial immunity. Accordingly, the court should dismiss Plaintiff's claims against the following judges and magistrates: Fox, Titus, Buckner, Rand, Fredericks, Long, Koelling, Cheshire, and Baddour.

Furthermore, Defendant Stanford is the Clerk of Superior Court of Orange County, and as such is a judicial official of the General Court of Justice, who engages in "judicial functions" that involve the discretionary application of law to a given set of facts. *See* N.C. GEN. STAT. § 7A-103 (enumerating judicial powers of Clerk of Court). Defendant Stanford is therefore entitled to immunity from suit. *See Martin v. Badgett*, 149 N.C. App. 667, 562 S.E.2d 607 (2002) (unpublished) (where a clerk of superior court enjoyed absolute judicial immunity from suit); *see also Williams v. Wickensimer*, C.A. No. 9:08-2488-PMD-GCK, 2008 WL 4613941, at *7 (D.S.C. Oct. 14, 2008) (noting that the doctrine of absolute quasi judicial immunity applies to court personnel). In any event, Plaintiff's alleged constitutional claim against Defendant

---

judges where a plaintiff seeks injunctive relief in addition to damages. *See Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006) (stating that "42 U.S.C. § 1983, as amended in 1996 by the [FCIA], explicitly immunizes judicial officers against suits for injunctive relief").

Stanford fails on the merits. Plaintiff alleges only that he requested a copy of the pretrial release policy from the Clerk's office and that he subsequently received a copy of the policy. These allegations are not enough to state a claim against Defendant Stanford.

Next, to the extent that Plaintiff has sued District Attorney Woodall and Assistant District Attorney Ramaswamy in their individual capacities, it is well established that a prosecutor is immune from liability in damages under section 1983 for actions taken as an advocate in pursuit of a criminal conviction. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996). Furthermore, to the extent that Plaintiff has sued Defendants Woodall and Ramaswamy in their official capacities, Plaintiff's suit for damages is barred by Eleventh Amendment immunity because a suit against these Defendants in their official capacities is in effect a suit against the State of North Carolina. *See Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (dismissing, on Eleventh Amendment grounds, claims brought against a district attorney in his official capacity because district attorneys in North Carolina act on behalf of the State, and a judgment against a district attorney in his official capacity would affect the state treasury). Finally, even if Defendants Woodall and Ramaswamy were not protected by prosecutorial immunity, the Complaint fails to state any federal claim against them.

As for Plaintiff's claim against SBI agent Snead, Plaintiff alleges that on or about May 31, 2006, Plaintiff was charged with 11 counts of Obtaining Property by

-11-

Case 1:07-cv-00760-NCT-DPD   Document 61   Filed 11/04/08   Page 11 of 14

False Pretenses in Orange County, North Carolina. Plaintiff alleges that the arresting entity was the SBI, led by agent Snead. Plaintiff alleges that his "pretrial detainment was set, ex parte, by Agent Kevin Snead and Superior Court Judge Ripley Rand, at an amount of [$2 million], in violation of the court ordered Orange County Pretrial Release Policy." (*See* Compl. ¶ 17.) Plaintiff further alleges that when he was initially taken into custody, Defendant Magistrate Long filled out a "condition of release" form showing the bail at $2 million as previously set by Defendant Snead and Judge Rand. Plaintiff alleges that Defendant Snead commented as he left the magistrate's office that "this time we're serious." (*Id.* ¶ 17.)

Even reading Plaintiff's claims in the light most favorable to him, Plaintiff fails to state a constitutional claim against Defendant Snead. Even if Snead originally set temporary bail at $2 million, by Plaintiff's own allegations this bail was subsequently reduced to $100,000 cash or $500,000 secured. Therefore, Plaintiff does not state a claim for violation of any of his constitutional rights against Defendant Snead. For this reason, the court should dismiss Plaintiff's claims against Defendant Snead. Furthermore, to the extent that Plaintiff is suing SBI Agent Snead in his official capacity, Plaintiff's suit for damages is barred by Eleventh Amendment immunity because a suit against Agent Snead in his official capacity is in effect a suit against the State of North Carolina.[3]  *See Waller v. Butkovich*, 584 F. Supp. 909, 935

---

[3] Although the Eleventh Amendment does not bar claims for prospective injunctive relief, the court has already concluded that Plaintiff's claims for injunctive and declaratory relief against all Defendants are now moot because the state charges against Plaintiff have

(M.D.N.C. 1984). In sum, Plaintiff's claims against Defendant Snead should be dismissed.

As to Defendants Orange County North Carolina Magistrate's Office, Orange County, and Moses Carey, Jr., the Chairman of the Orange County Board of Commissioners, Plaintiff's Complaint contains no allegations against any of these Defendants.[4] Instead, the Complaint alleges constitutional violations as a result of the policy of the 15B Judicial District (a state entity) and the actions of judicial officials from the 15B Judicial District. Since the alleged constitutional violations did not arise out of an official policy or custom of Defendant Orange County or the actions of Defendant Carey, dismissal is proper as to these Defendants.[5]

In sum, for all the reasons discussed above, the court concludes that all of Plaintiff's claims are barred as a matter of law, and Defendants' various motions to dismiss should be granted.

Plaintiff's Motion for Default Judgment and His Corresponding "Request for Order"

---

been dropped and Plaintiff is no longer in state custody.

[4] Moreover, the "Orange County Magistrate's Office" does not even appear to be an entity capable of being sued under North Carolina law. *See* FED. R. CIV. P. 17(b) (stating that the capacity to sue or be sued shall be determined by the law of the state in which the district court is located); *Avery v. Burke*, 660 F.2d 111, 113-14 (4th Cir. 1981) (noting that state law dictates whether a governmental agency has the capacity to be sued in federal court).

[5] Furthermore, and in any event, the court agrees with Defendants Orange County and Carey that it does not appear that these two defendants were properly served with process.

Finally, on February 27, 2008, Plaintiff filed a motion for default judgment against various Defendants. On April 4, 2008, he filed a "Request for Order," in which he essentially restates his request for default judgment against various Defendants. Plaintiff apparently contends that he served various Defendants with process and that they failed to properly answer or otherwise plead. The court has already found, however, that Plaintiff failed to properly serve some of the Defendants in this case; therefore, default judgment is not appropriate as to these Defendants. In sum, Plaintiff's motion for default judgment and his "request for order" should be denied.

**CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that the court **DENY** all three of Plaintiff's motions (docket nos. 8, 21, and 42) and **GRANT** all motions filed by Defendants (docket nos. 11, 18, 25, and 33). To this extent, Plaintiff's action should be dismissed with prejudice.

_____
Wallace W. Dixon
United States Magistrate Judge

November 4, 2008